IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

BRANDEN THOMAS,             *

    Plaintiff,           *

    v.                   *     CIVIL NO.: WDQ-13-0685

PFC RYAN A. FLANAGAN,       *

    Defendant.           *

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Branden Thomas sued Ryan Flanagan for civil rights violations under federal and state law. On September 23, 2015, a jury found Officer Flanagan liable on all claims and awarded Thomas compensatory damages, but denied punitive damages. Pending are Thomas's motion for a new trial on damages and motion for attorney's fees. No hearing is necessary. Local Rule 105.6 (D. Md. 2014). For the following reasons, the motion for a new trial will be denied, and the motion for attorney's fees will be granted.

I.   Background[1]

This suit arises from an incident at Seacrets Bar and Restaurant in Ocean City, Maryland.[2] On August 16, 2012, Bryon

---

[1] Neither party ordered a transcript of the trial. Therefore, the facts are from the Court's review of a rough transcript and the Court's recollection.

Scott Schue attacked Chandra Hyneman in Seacrets's parking lot. Thomas and his friends were leaving Seacrets and came across the incident as police were reporting to the scene and detaining Schue. While Thomas was in the parking lot, an argument and fight with Officer Flanagan occurred. The altercation ended with Thomas's arrest.

During the three-day trial, Thomas presented evidence that Officer Flanagan attacked Thomas in an unprovoked or extreme manner. In contrast, Officer Flanagan presented evidence that Thomas was intoxicated, verbally antagonized Schue, and did not heed requests to leave the area; Officer Flanagan attempted to remove Thomas from the scene, but Thomas responded physically. At the conclusion of the trial, the jury found Officer Flanagan liable under federal law for false arrest and excessive force. The jury also found Officer Flanagan liable under Maryland law for false arrest, excessive force, assault, battery, false imprisonment, and malicious prosecution.

The majority of the evidence at trial was focused on the behavior of Thomas and Officer Flanagan. Relatively little

---

[2] Because neither party attacks the jury's findings on liability, the majority of the facts surrounding this incident are irrelevant to these motions. Accordingly, the Court will focus only on those facts that relate to damages or which provide necessary context.
    In analyzing a motion for a new trial, all evidence must be viewed in the light most favorable to the non-moving party. *See Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 305 (4th Cir. 1998).

evidence was presented on damages. Thomas testified that before the incident he had been employed by Master Security and was paid $23 per hour. After six months, Thomas was promoted to sergeant and made $29 per hour. Thomas testified that there are four levels of security clearance, and security officers with the highest clearance level earn about $40 per hour. When he was arrested by Officer Flanagan, Thomas had a basic level clearance and was preapproved for the next level of clearance. When Thomas reported his arrest, however, Master Security refused to pay for Thomas's screening for a secret level clearance because it was likely it would be denied.

Because Thomas's current duty station required a secret level clearance, he has to be moved to a new area. Master Security attempted to place Thomas at the Federal Trade Commission, but Thomas was rejected because of the pending charges. Thomas testified that Master Security attempted to place him in other buildings, but nothing worked. Thomas was unemployed for four to five months before finding a job with Customs and Border Patrol in Virginia for $24 per hour. Thomas still has his basic security clearance.

Thomas also presented the expert testimony of William Reece Loveridge, a security officer with experience in security clearances and determinations. Loveridge testified that he has reviewed the police report of Thomas's August 16, 2012 arrest,

the parties' interrogatories, and the Department of Defense's adjudicative guidelines. Loveridge concluded that the loss of Thomas's preapproval for secret level clearance resulted from the arrest. During his direct and redirect, Loveridge emphasized that an arrest--and not necessarily a conviction--can affect security clearance determinations.

On the cross examinations of Thomas and Loveridge, Officer Flanagan showed that Thomas had been arrested *following* the incident in Ocean City for domestic violence.[3] Thomas admitted that he and his girlfriend had brought charges against each other that resulted in their arrests. Loveridge conceded that he did not consider this arrest in his determination.

Based on the evidence, the jury awarded Thomas $1,500 for his medical expenses, $25,000 for past lost wages, and $18,500 for non-economic damages. The jury did not award any compensatory damages for future lost wages and refused to award punitive damages under either federal or Maryland law.

On October 13, 2015, Thomas moved for a new trial on damages. On October 21, 2015, Thomas moved for attorney's fees. On October 30, 2015, Officer Flanagan opposed the motion for a

---

[3] In his reply, Thomas argues that his counsel objected to this testimony and the Court sustained the objection. This was not the case. The Court did not permit questioning on any charges or arrests that occurred before August 16, 2012, but the Court did allow questioning on the subsequent arrest. Therefore, the jury was free to consider this evidence in awarding damages.

new trial. On November 12, 2015, Thomas replied. On November 25, 2015, Thomas filed a memorandum in support of his motion for attorney's fees. On December 9, 2015, Officer Flanagan opposed the motion. On December 16, 2015, Thomas replied.

II. Analysis

A. Thomas's Motion for a New Trial

Thomas argues that a new trial on damages is necessary because the jury's compensatory damage award did not adequately calculate his past and future lost wages. Thomas also asserts that he was entitled to punitive damages on his federal civil rights claim. See ECF No. 52 at 3-4. Officer Flanagan contends that the award for past lost wages was sufficient, and Thomas failed to show future lost wages or the maliciousness required for punitive damages. See ECF No. 55 at 3-4.

A new trial is granted under Federal Rule of Civil Procedure 59(a) "only if (1) the verdict is against the clear weight of the evidence, (2) is based on evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *Snyder v. Phelps*, 533 F.Supp. 2d 567, 574 (D. Md. 2008) (citing *Eberhardt v. Integrated Design & Constr., Inc.*, 167 F.3d 861, 869 (4th Cir. 1999)). Rule 59(a) "expressly permit[s]" partial new trials limited to the issue of damages. *Great Coastal Exp., Inc. v. Int'l Broth. Of Teamsters*,

5

*Chauffeurs, Warehousemen and Helpers of Am.*, 511 F.2d 839, 845-46 (4th Cir. 1975). The amounts of compensatory and punitive damages, however, are analyzed under different prongs of the new trial analysis.

The first two prongs of the Rule 59(a) analysis "require a district court to determine purely factual questions: whether the jury's damages award is (1) 'against the weight of the evidence' or (2) 'based upon evidence which is false.'" *Atlas Food Systems and Services, Inc. v. Crane Nat. Vendors, Inc.*, 99 F.3d 587, 594 (4th Cir. 1996) (quoting *Johnson v. Parrish*, 827 F.2d 988, 991 (4th Cir. 1987)). "This review encompasses a comparison of the factual record and the verdict to determine their compatibility." *Id.* "Consequently, jury determinations of factual matters such as liability on a cause of action, liability for compensatory and punitive damages, and *the amount of compensatory damages* will be reviewed by determining whether the jury's verdict is against the weight of the evidence or based on evidence which is false." *Id.* (emphasis added).

In contrast, "a jury's determination of the amount of punitive damages is not factual." *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 305 (4th Cir. 1998). The amount of punitive damages is "an almost unconstrained judgment or policy choice about the severity of the penalty to be imposed, given the jury's underlying factual determinations about the defendant's

6

conduct." *Atlas Food Sys.*, 99 F. 3d at 594. "Because the factual record provides no direct foundation for the *amount* of punitive damages, a review of the size of the jury's award best utilizes the third prong of the Rule 59 review standard—whether the jury's award will result in a miscarriage of justice." *Id.* (emphasis in original).

Regardless of whether a court is considering compensatory or punitive damages, new trials should only "be granted when necessary to prevent an injustice . . . they are not to be granted unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done." *Alliance for Telecommunications Industry Solutions, Inc. v. Hall*, No. CCB-05-440, 2007 WL 3224589, at *4 (D. Md. Sept. 27, 2007) (*citing Pathways Psychosocial v. Town of Leonardtown*, 223 F.Supp.2d 699, 706 (D. Md. 2002)). Moreover, the Fourth Circuit "has noted that there is 'always a presumption in favor of the validity of a verdict if it is the result of honest judgment . . . .'" *Great Coastal Exp., Inc.*, 511 F.2d at 846 (quoting *City of Richmond v. Atlantic Co.*, 273 F.2d 902, 916 (4th Cir. 1960)).

1. Compensatory Damages

Thomas argues that the jury's award for past lost wages is inconsistent with the evidence presented:

> Based on the evidence that he was working full-time for 40 hours multiplied at four weeks per month at $28.00 per hour for a period of five months, the damages for back pay just for the period of five months of unemployment should have been at least $22,400. In addition, the evidence showed that he has been underemployed, making only $24.00 an hour for the last two and a half years, full time. Assuming 2,000 hours per year, he should have received another $8,000 each year (2,000 X $4.00); therefore, in 2.5 years he should have been compensated another $20,000. Therefore, to make him whole, based on the evidence presented, he should have received $42,400 in lost wages instead of $25,000.

ECF No. 52 at 3. Thomas also argues that he was entitled to lost future pay because he "will be making substantially less for the foreseeable future due to his inability to reobtain his favorable status in receiving a secret security clearance." ECF No. 52-1 at 5.

The jury's award of compensatory damages was not "against the weight of the evidence" or "based upon evidence which is false." *Atlas Food Sys.*, 99 F.3d at 594; *Johnson*, 827 F.2d at 991. Despite Thomas's assertions that his evidence was "uncontroverted,"[4] Thomas testified that he had been arrested on domestic violence charges after the Ocean City incident, and Loveridge conceded that he had not considered this arrest in rendering his opinion. Throughout the trial, including during Loveridge's testimony, Thomas emphasized that an arrest alone is sufficient to derail a favorable security clearance. Thus, a

---

[4] *See* ECF No. 52-1 at 5.

reasonable jury could conclude that the domestic violence incident would have also resulted in the loss of Thomas's pre-approval for a higher security clearance.

Although Thomas was unclear when this domestic violence incident occurred, he testified that he and his girlfriend began having trouble when he was unemployed, and she left him because of this. He also testified that they broke up immediately after the domestic violence incident. Therefore, based on the testimony, it is reasonable to conclude that the domestic violence incident occurred during or soon after Thomas's period of unemployment. Based on Thomas's own calculations, as detailed above, the jury's award of $25,000 in past lost wages was adequate to compensate him for five months of unemployment and a brief period of underemployment. The jury's refusal to award damages for the full two and half years during which Thomas was underemployed is not against the weight of the evidence.

Likewise, Thomas's subsequent arrest for domestic violence could lead a reasonable jury to conclude that Thomas is not entitled to future lost wages. Moreover, Thomas presented no evidence on future lost wages other than Thomas's general testimony that security guards with the highest clearance can earn up to $40 per hour and Loveridge's testimony that Thomas will face future obstacles in obtaining a favorable clearance.

That Thomas's "upward mobility"[5] *may* be curtailed does not mandate an award of future lost damages.

2. Punitive Damages

Thomas contends that he was entitled to punitive damages on the federal civil rights claim "[g]iven the unprovoked nature of these assaults and false arrests, and the maliciousness with which PFC Flanagan attacked him while holding him on the ground . . . ." ECF No. 52 at 5. As the Court instructed the jury, an award of punitive damages is appropriate "if the Plaintiff proves by a preponderance of the evidence that the Defendant's conduct was malicious and wanton, not merely unreasonable. An act or failure to act is maliciously done if it is prompted by ill will or spite towards the injured person. An act or failure to act is wanton if done with a reckless or callous disregard for the rights of the injured person." Court's Jury Instruction; *see also Smith v. Wade*, 461 U.S. 30, 53-56 (1983). Although Thomas presented evidence that Officer Flanagan acted maliciously and wantonly, Officer Flanagan presented equally persuasive evidence that he was merely attempting to secure the area and protect bystanders. The jury could have reasonably concluded that Officer Flanagan acted unreasonably in subduing Thomas, but did not have the mental state required for punitive damages.

---

[5] *See* ECF No. 52 at 3; ECF No. 52-1 at 3-5.

Furthermore, although the Court instructed the jury on punitive damages, Thomas never argued punitive damages to the jury. Thomas's failure to properly argue his case does not necessitate a new trial and a "second bite at the apple." *See Yankah v. T-Mobile, USA, Inc.*, 2014 WL 2808796, at *3-4 (E.D. Va. June 20, 2014); *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998).

Because neither the jury's award of compensatory damages nor its refusal to award punitive damages was against the weight of the evidence, Thomas's motion for a new trial on damages will be denied.

B. Thomas's Motion for Attorney's Fees

On November 25, 2015, Thomas's counsel submitted a memorandum in support of his motion for attorney's fees, detailing the hourly rates and work performed by the counsel on the case. ECF No. 57. Lead counsel, Patricia Ann Cresta Savage, has been admitted to the bar for over 15 years and seeks an hourly rate of $350.00 per hour. ECF No. 57 at 8. Her associate, Jason Aroz, has been admitted to the bar for less than five years and seeks an hourly rate of $150.00.[6] Counsel

---

[6] Appendix B of the Local Rules for the District of Maryland provides "Rules and Guidelines for Determining Attorneys' Fees in Certain Cases." To guide a court in awarding fees, the Local Rules establish the following presumptively reasonable hourly fee ranges:

11

also provided detailed tables of the work performed on the case, "ma[king] reductions . . . for hours that defense counsel perceived to be subject to any question as potentially excessive, redundant, or otherwise unnecessary." Id. at 3. Ultimately, Thomas requests $91,097.00 in attorney's fees. Id. at 3.

In his opposition, Officer Flanagan "do[es] not oppose the reasonableness of the hours expended by Plaintiff's counsel and her associate in this case and believe[s] that proper 'billing judgment' was exercise[d] . . . Similarly, [Officer Flanagan] do[es] not question the reasonableness of the hourly billing rate for counsel and her associate at they are below the midpoint of the allowable range given location and experience." ECF No. 58 at 2-3. Instead of attacking the reasonableness of Thomas's counsel's hours and fees, Officer Flanagan argues that the Court should reduce the fee award because Thomas did not have a high degree of success at trial. See id. at 1.

---

(a) Lawyers admitted for less than 5 years: $150-225;
(b) Lawyers admitted for 5 to 8 years: $165-300;
(c) Lawyers admitted for 9 to 14 years: $225-350;
(d) Lawyers admitted for 15 to 19 years: $275-425;
(e) Lawyers admitted for 20 years or more: $300-475
(e) Paralegals and law clerks: $95-150.

D. Md. Local Rules, App'x. B.3 (2014). Cresta Savage's requested rate is the Guideline's midpoint for attorneys with her years of experience, and her associate's requested rate is the lowest established for lawyers with less than five years of experience.

Under 42 U.S.C. § 1988, a court may award a prevailing party[7] in a civil rights action under § 1983 attorney's fees and costs.[8] "The proper calculation of an attorney's fee award involves a three-step process." *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013). As the first step, a court "determine[s] the lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009). Next, the court "subtract[s] fees for hours spent on unsuccessful claims unrelated to successful ones." *Id.* "Finally, the court should award 'some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff.'" *McAfee*, 738 F.3d at 88 (quoting *Robinson*, 560 F.3d at 243).

In this case, Officer Flanagan does not contest the reasonableness of the hours expended by Thomas's counsel or their hourly rates. Moreover, the rates requested by counsel are presumptively reasonable because they are within the Local Rules' Guidelines. *See* D. Md. Local Rules, App'x. B.3 (2014);

---

[7] A "prevailing party" is "a party in whose favor a judgment is rendered, regardless of the amount of damages awarded." *Grissom v. The Mills Corp.*, 549 F.3d 313, 318 (4th Cir. 2008). Officer Flanagan concedes that Thomas is the "prevailing party" in this case. ECF No. 58 at 2.

[8] Awarding fees is within the court's discretion. *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013) ("We review for abuse of discretion a district court's award of attorney's fees, but, we will only reverse such an award if the district court is 'clearly wrong' or has committed an 'error of law.'").

*Ledo Pizza Sys., Inc. v. Singh*, 2014 WL 1347113, at *5 (D. Md. Apr. 3, 2014). Thus, the $91,097.00 requested by counsel is a proper lodestar.[9]

As stated by the Supreme Court in *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010), there is a "strong presumption" that the lodestar represents a reasonable fee. This presumption may be overcome only "in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Id.*

Next, a court should subtract fees for hours spent on unsuccessful claims unrelated to the successful ones." *Grissom*, 549 F.3d at 321. Such an analysis is unnecessary here because the jury returned a verdict for Thomas on all his claims, and counsel have already reduced their fees "for hours that defense counsel perceived to be subject to any question as potentially excessive, redundant, or otherwise unnecessary." ECF No. 57 at 3; *see McAfee*, 738 F.3d at 90-92 (plaintiff only prevailed on one of three counts in the complaint; therefore, the district court reduced the attorneys' compensable hours to discount for

---

[9] Reasonable hours and fees are ordinarily calculated by examining the factors set forth in *Johnson v. Georgia Highway Express Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). *See Robinson*, 560 F.3d at 243-44. Such an analysis, however, is unnecessary in this case because Officer Flanagan concedes the reasonableness of Thomas's counsel's hours and fees.

the unsuccessful claims). Further, Officer Flanagan agrees that the reductions and hours are reasonable. ECF No. 58 at 1-3.

"In the final step before making an attorney's fee award under § 1988, a district court must consider the relationship between the extent of success and the amount of the fee award." *McAfee*, 738 F.3d at 92 (quotation omitted). "The court will reduce the award if 'the relief, however significant, is limited in comparison to the scope of the litigation as a whole.'" *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 439-40 (1983)). "Indeed, the Supreme Court has recognized that the extent of a plaintiff's success is 'the most critical factor' in determining a reasonable attorney's fee under 42 U.S.C. § 1988." *Id.* (citing *Hensley*, 461 U.S. at 436).

To determine the extent of a plaintiff's success, a court should "compare the amount of damages sought to the amount awarded." *Mercer v. Duke Univ.*, 401 F.3d 199, 204 (4th Cir. 2005). "If a § 1983 plaintiff achieves only part of the success she sought, the lodestar amount may be excessive." *McAfee*, 738 F.3d at 93.

For example, in *McAfee v. Boczar*, 738 F.3d 81, 85-86 (4th Cir. 2013), the plaintiff brought a three-count complaint against the defendant, but prevailed at trial on only the § 1983 claim. The jury awarded the plaintiff "$2943.60 in stipulated out-of-pocket expenses relating to her state court defense," but

15

"declined to otherwise award [the plaintiff] additional compensatory or any punitive damages." *Id.* The district court awarded the plaintiff "$365,027 in attorney fees, plus $10,305.51 in costs" under § 1988.

On appeal, the Fourth Circuit found the fee award to be an abuse of discretion because the district court failed to adequately consider the plaintiff's degree of success and reduce the fees accordingly. *McAfee*, 738 F.3d at 88, 92-95. The Fourth Circuit determined that "[a]lthough [the plaintiff's] success in recovering her general out-of-pocket expenses must be accorded respect, it does not justify a fee award of over $300,000—approximately 109 times the verdict—when [the plaintiff]'s failure to recover any special compensatory damages, or any punitive damages at all, is taken into account." *Id.* at 92. The *McAfee* court noted, "[t]hough Congress intended § 1988 fee awards to be 'adequate to attract competent counsel,' it also wanted to avoid 'produc[ing] windfalls to attorneys.'" *Id.* (quoting *City of Riverside v. Rivera*, 477 U.S. 561, 580 (1986)). "The district court's erroneous view of [the plaintiff]'s success—best illustrated by comparing [the plaintiff]'s lofty expectations with the jury's paltry damages award—produced an excessive fee award that would . . .

constitute a windfall."[10]  *Id.*  Therefore, the Fourth Circuit vacated the fee award and directed that an award of $100,000 in fees, exclusive of costs, be entered.  *Id.* at 95.

In this case, Officer Flanagan argues that Thomas achieved a low degree of success considering the damages he sought.  *See* ECF No. 58 at 3-6.  Thomas did not seek specific damages in his complaint;[11] thus, the Court must look elsewhere to determine his expectations.  First, during settlement negotiations, Thomas demanded $400,000 in damages.  ECF No. 58 at 5; *see Thomas v. Nat'l Football League Players Ass'n*, 273 F.3d 1124, 1130 n. 9 (D.C. Cir. 2001) (district court "has discretion to consider settlement negotiations in determining the reasonableness of fees but it is not required to do so") (*cited in McAfee*, 738 F.3d at 90).  Using this sum, the jury's award of $45,000 is roughly 11% of what Thomas sought during settlement.

Another source for Thomas's expectations for recovery is his motion for a new trial.  In the motion, as detailed previously, Thomas asserted that he was entitled to

---

[10] *See also Farrar v. Hobby*, 506 U.S. 103, 114, 121 (1992) (Supreme Court reversed a fee award of $280,000 when the plaintiff sought $17 million in compensatory damages, but the jury only awarded nominal damages.  In her concurring opinion, Justice O'Connor stated that "a substantial difference between the judgment recovered and the recovery sought suggests that the victory is in fact purely technical.").

[11] *See* ECF No. 1 at 12 (requesting damages "in an amount to be determined at trial).

approximately $162,400 in compensatory and punitive damages. The jury's award represents only 28% of this expectation.

Considering these figures, Officer Flanagan is correct in asserting that Thomas succeeded in recovering less than half of the damages he sought. However, these percentages do not mandate reduction of the fee award. Although a court should consider a plaintiff's degree of success, "[t]he Supreme Court has rejected the proposition that a § 1988 fee award must invariably be proportionate to the amount of damages a civil rights plaintiff actually recovers." *McAfee*, 738 F.3d at 94 (citing *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986)). For example, in *Rivera*, the plaintiff recovered $33,350 in damages, and the Court affirmed an attorney's fee award of $245,456. *Rivera*, 477 U.S. at 565-57. Similarly, in *McAfee*, the Fourth Circuit directed that $100,000 in fees, exclusive of costs, be awarded even though the plaintiff had recovered only $2,943.60 in damages. *McAfee*, 738 F.3d at 94-95. Moreover, the *McAfee* court emphasized that part of the fee reduction was based on the plaintiff's lack of *litigation* success. *Id.* ("Although a substantial disproportionality between a fee award and a verdict, standing alone, may not justify a reduction in attorney's fees, a lack of litigation success will. In short, the limited success achieved by McAfee—reflected by the jury's decision not to award anything for deprivation of liberty, great

inconvenience, great insult and humiliation, and mental anguish, or make an award of punitive damages—undermines the attorney's fee award being appealed.").

In this case, Thomas prevailed on every claim in the complaint. Although he recovered less in damages than he sought, the requested fees are only twice the damages the jury awarded. *See Rivera*, 477 U.S. at 565-57 (affirming an award more than seven times the amount of damages). Thomas seeks fees in a proportion below the fees ordered by the Fourth Circuit in *McAfee*, although Thomas was proportionally more successful than the plaintiff in *McAfee*. The fees sought by Thomas are reasonable in light of his success at trial.

Accordingly, Thomas's motion for $91,097.00 in attorney's fees will be granted.

III. Conclusion

For the reasons stated above, Thomas's motion for a new trial will be denied; the motion for attorney's fees will be granted.

1/20/16

William D. Quarles, Jr.
United States District Judge